UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN RYAN, <br><br> Plaintiff, <br><br> v. <br><br> STRONGBRIDGE BIOPHARMA PLC, JOHN H. JOHNSON, GARHENG KONG, DAVID N. GILL, JEFFREY W. SHERMAN, MARTEN STEEN, and HILDE H. STEINEGER, <br><br> Defendants. | Case No. _____ <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff John Ryan ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. Plaintiff brings this action against Strongbridge Biopharma plc ("Strongbridge" or the "Company") and the members of Strongbridge's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to merge with Xeris Pharmaceuticals, Inc. ("Xeris") through Xeris Biopharma Holdings, Inc. ("HoldCo"), and Wells MergerSub, Inc. ("MergerSub") (the "Proposed Transaction").

2. On May 24, 2021, Strongbridge announced that it had entered into a Transaction Agreement (the "Transaction Agreement") pursuant to which, each Strongbridge shareholder will

receive: (i) 0.7840 of a newly issued share of HoldCo common stock; and (ii) one non-tradeable contingent value right ("CVR") for each Strongbridge share they own. Each CVR will represent a contractual right to receive future conditional payments worth up to an aggregate amount of $1.00, settleable in cash, additional shares of HoldCo common stock, or a combination of cash and additional shares of HoldCo common stock, upon the achievement of certain regulatory or sales milestones relating to Strongbridge's products, Keveyis and Recorlev.

3. On July 29, 2021, Strongbridge filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) Strongbridge's and Xeris's financial projections and the financial analyses that support the fairness opinion provided by the Company's financial advisor MTS Securities, LLC ("MTS"); and (ii) the background of the Proposed Transaction. Without additional information, the Proxy is materially misleading in violation of the federal securities laws.

4. The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Transaction Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Strongbridge's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Strongbridge.

9. Defendant Strongbridge is an Ireland corporation, with its principal executive offices located at 900 Northbrook Drive, Suite 200, Trevose, Pennsylvania 19053. Strongbridge's common stock trades on the Nasdaq Global Select Market under the ticker symbol "SBBP."

10. Defendant John H. Johnson ("Johnson") has served as Chief Executive Officer ("CEO") of the Company since July 2020 and a director since March 2015.

11. Defendant Garheng Kong has been Chairman of the Board since July 2020 and a director of the Company since September 2015.

12. Defendant David N. Gill has served as a director of the Company since September 2019.

13. Defendant Jeffrey W. Sherman has served as a director of the Company since October 2016.

14. Defendant Mårten Steen has served as a director of the Company since December 2014.

15. Defendant Hilde H. Steineger has served as a director of the Company since January 2014.

16. Relevant non-party Xeris is a Delaware corporation with its principal executive offices located at 180 N. LaSalle Street, Suite 1600, Chicago, Illinois 60601. Xeris is a pharmaceutical company delivering innovative solutions to simplify the experience of administering important therapies that people rely on every day around the world. Xeris's common stock trades on the Nasdaq Global Select Market under the ticker symbol "XERS."

17. Relevant non-party HoldCo is a Delaware corporation formed for the purpose of holding Xeris and Strongbridge as direct subsidiaries following completion of the Proposed Transaction.

**SUBSTANTIVE ALLEGATIONS**

A. **Background of the Company**

18. Strongbridge is a global commercial-stage biopharmaceutical company focused on the development and commercialization of therapies for rare diseases with significant unmet needs. Strongbridge's rare endocrine franchise includes RECORLEV (levoketoconazole), an adrenal steroidogenesis inhibitor with a New Drug Application ("NDA") that is currently under review by the U.S. Food and Drug Administration ("FDA") for the treatment of endogenous Cushing's syndrome, and veldoreotide extended release, a pre-clinical next-generation somatostatin analog being investigated for the treatment of acromegaly and potential additional applications in other

conditions amenable to somatostatin receptor activation. Both RECORLEV and veldoreotide have received orphan drug designation from the FDA and the European Medicines Agency.

19. The Company's rare neuromuscular franchise includes KEVEYIS (dichlorphenamide), the first and only FDA-approved treatment for hyperkalemic, hypokalemic, and related variants of primary periodic paralysis. KEVEYIS has orphan drug exclusivity in the United States.

B. The Proposed Transaction

20. On May 24, 2021, Strongbridge and Xeris issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> CHICAGO & DUBLIN & TREVOSE, Pa. -- Xeris Pharmaceuticals, Inc. ("Xeris") (Nasdaq: XERS), a pharmaceutical company leveraging its novel formulation technology platforms to develop and commercialize ready-to-use injectable drug formulations, and Strongbridge Biopharma plc ("Strongbridge") (Nasdaq: SBBP), a global commercial-stage biopharmaceutical company focused on the development and commercialization of therapies for rare diseases with significant unmet needs, today announced that they have entered into a definitive agreement under which Xeris will acquire Strongbridge for stock and contingent value rights ("CVRs"). The agreement, including the maximum aggregate amount payable under the CVRs, values Strongbridge at approximately $267 million based on the closing price of Xeris common stock of $3.47 on May 21, 2021 and Strongbridge's fully diluted share capital. The transaction, which has been unanimously approved by the boards of directors of both companies, with the exception of Jeffrey W. Sherman, M.D., a director in common to both companies, who abstained from the voting, is expected to close early in the fourth quarter of 2021, subject to the satisfaction of closing conditions. Upon close of the transaction, the businesses of Xeris and Strongbridge will be combined under a new entity to be called Xeris Biopharma Holdings, Inc. ("Xeris Biopharma Holdings").
>
> Under the terms of the agreement at closing, Strongbridge shareholders will receive a fixed exchange ratio of 0.7840 shares of Xeris Biopharma Holdings common stock for each Strongbridge ordinary share they own. Based on the closing price of Xeris common stock on May 21, 2021, this represents approximately $2.72 per Strongbridge ordinary share and a 12.9% premium to the closing price of Strongbridge ordinary shares on May 21, 2021. Strongbridge shareholders will also receive 1 non-tradeable CVR for each Strongbridge ordinary share they own, worth up to an additional $1.00 payable in cash or Xeris Biopharma Holdings common stock (at Xeris Biopharma Holdings' election) upon achievement of the following

triggering events: (i) the listing of at least one issued patent for KEVEYIS® in the U.S. Food & Drug Administration's Orange Book by the end of 2023 or at least $40 million in KEVEYIS® annual net sales in 2023 ($0.25 per ordinary share), (ii) achievement of at least $40 million in RECORLEV® annual net sales in 2023 ($0.25 per ordinary share), and (iii) achievement of at least $80 million in RECORLEV® annual net sales in 2024 ($0.50 per ordinary share). The minimum payment on the CVR per Strongbridge ordinary share is zero and the maximum payment is $1.00 in cash or Xeris Biopharma Holdings common stock, at Xeris Biopharma Holdings' election.

Upon close of the transaction, current Xeris shareholders are expected to own approximately 60% of the combined company, while current Strongbridge shareholders are expected to own approximately 40%.

"This is a very compelling transaction that will create a scalable and diversified biopharmaceutical company increasingly oriented toward more specialty and rare disease products, positioning us for long-term product development and commercial success," said Paul R. Edick, Chairman and Chief Executive Officer of Xeris. "Strongbridge's attractive rare disease portfolio and capabilities are highly complementary with Xeris.  Building on the continuing prescription growth of Gvoke® with an enhanced and diversified growth profile, expanded and scalable salesforce, and expected cost-synergies, the combined company will be well positioned to deliver compelling long-term value to shareholders.  We look forward to welcoming the Strongbridge team to Xeris and leveraging our differentiated portfolios and technologies to help the patients we serve improve their quality of life."

"We are excited to combine with Xeris to drive the next phase of our growth," said John H. Johnson, Chief Executive Officer of Strongbridge.  "Strongbridge has made significant progress advancing its portfolio of therapies for rare endocrine and rare neuromuscular diseases with focus, commitment and passion for the patients and physicians that we serve.  This includes delivering strong revenue growth for KEVEYIS® (dichlorphenamide), our first commercial, rare neuromuscular product, and the successful development of RECORLEV® (levoketoconazole), which is under review for approval by the FDA with expected commercialization in the first quarter of 2022 pending FDA approval.  Through this combination with Xeris, we will gain additional scale and financial resources to better meet the unmet needs of those we serve.  Our combined pipeline, drug development talent and commercial infrastructure will enable us to accelerate product launches and drive further growth.  We look forward to working closely with the Xeris team to unlock the potential value of our combined assets, while providing our shareholders with the opportunity to participate in the success of the combined company."

**Strategic Rationale and Financial Benefits of the Transaction**

The combination of Xeris and Strongbridge is expected to deliver compelling strategic and financial benefits including:

- **Diversified and Increased Revenue Growth**. The combined company is expected to have a stronger revenue base with two rapidly growing commercial assets in Gvoke® and KEVEYIS®, and a near-term product launch in RECORLEV®. Gvoke® sells in a multi-billion dollar addressable market, as will RECORLEV®, if approved. With approval of RECORLEV® by the FDA, Xeris' experienced, endocrinology-focused commercial infrastructure is expected to enable a rapid product launch for RECORLEV® into the endocrinology community. With Gvoke®, KEVEYIS® and RECORLEV®, the combined company will boast multiple, highly differentiated, growing, commercial assets that could have significant combined revenue potential, supported by a larger and more efficient commercial organization.

- **Significant Potential Synergies**. The combined company is expected to generate approximately $50 million in pre-tax synergies by the end of 2022 resulting from immediate savings, including redundant general, administrative and other public company costs, and from the avoidance of future costs, most notably within the commercial and medical affairs functions. Shareholders of the combined company are expected to benefit from significant cost avoidance and the potential for more rapid and achievable near-term growth by utilizing Xeris' existing commercial infrastructure to launch RECORLEV® soon after product approval. Xeris' management and the independent Xeris directors are committed to retaining and incentivizing the most talented individuals in their respective functions between the two companies to ensure continuity and ongoing success.

- **Specialized Commercial Platform**. The combined company will have a robust rare disease and endocrinology-focused commercial infrastructure, primed to bring the benefits of the company's products to a wider range of patients with unmet needs. At closing, the organization will have approximately 110 field sales representatives, as well as 50 inside sales and support employees, and a fully operational patient and provider support team, enabling a rapid potential product launch for RECORLEV® in the first quarter of 2022, as well as enhanced sales across the entire portfolio.

- **Expanded Development Pipeline**. In addition to RECORLEV®, the combined company will have a robust pipeline of development programs to extend the current marketed products into important new indications and uses and bring new products forward using its formulation technology platforms, supporting long-term product development and commercial success.

- **Strengthened Strategic Profile**. This transaction will enable the combined company to have a scalable infrastructure for continued development of specialist oriented and rare disease products from its proprietary XeriSol™ and XeriJect™ formulation technologies, as well as consolidation of commercial- and late development-stage products and companies focused on endocrinology and rare diseases.

- **Improved Access to Capital Markets**. With enhanced scale, multiple revenue generating commercial assets and a high potential value near-term development pipeline, the combined company is expected to have a more attractive profile to investors and to benefit from greater access to the debt and equity markets at a lower cost of capital.

**Additional Information**

Upon close of the transaction, the businesses of Xeris and Strongbridge will be combined under Xeris Biopharma Holdings, which will be incorporated in Delaware and will continue to have its principal executive offices in Chicago, IL. On close, Xeris shareholders will exchange each share of Xeris common stock they own for 1 share of Xeris Biopharma Holdings common stock.

Xeris Chairman and CEO, Paul Edick, will act as Chairman and Chief Executive Officer of Xeris Biopharma Holdings. The Xeris Biopharma Holdings board will comprise the other existing Xeris directors, together with John Johnson and Garheng Kong, M.D., PhD, MBA who will join the combined company's board as new independent directors. A director in common to both companies, Jeffrey W. Sherman, M.D., will continue to serve on the Xeris Biopharma Holdings board following the transaction.

Xeris Biopharma Holdings' shares of common stock are expected to trade on the Nasdaq Global Select Market (Nasdaq) under the ticker XERS.

The transaction is expected to close early in the fourth quarter of 2021, subject to customary closing conditions and approval by Xeris and Strongbridge shareholders.

In addition, certain Strongbridge directors, executive officers, CAM Capital and HealthCap VI, L.P., representing approximately 17% of Strongbridge's outstanding ordinary shares, have entered into irrevocable undertakings to vote in favor of the transaction.

SVB Leerink is acting as financial advisor to Xeris, and Goodwin Procter LLP and A&L Goodbody LLP are serving as legal counsel. MTS Health Partners, LP is acting as financial advisor to Strongbridge, and Skadden, Arps, Slate, Meagher & Flom, LLP and Arthur Cox LLP are serving as legal counsel.

### C. The Proxy Misleads Strongbridge Stockholders by Omitting Material Information

21. On July 29, 2021, Strongbridge filed the materially misleading and incomplete Proxy with the SEC. Designed to convince Strongbridge's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning: (i) Strongbridge's and Xeris's financial projections and the financial analyses performed by the Company's financial advisor MTS; and (ii) the background of the Proposed Transaction.

22. First, the Proxy omits material information regarding Strongbridge's and Xeris's financial projections.

23. The Proxy fails to quantify the "internal assumptions prepared by Strongbridge management" underlying the "April 8 Strongbridge Projections" and the "Strongbridge Management Projections," including the internal assumptions:

> about the probability of technical success and probability of regulatory approvals, launch timing, epidemiology, pricing, sales ramp, market share, market exclusivity, research and development expenses, sales and marketing expenses, general and administrative expenses, effective tax rate and utilization of net operating losses and other relevant factors related to Strongbridge's long-term operation plan.

Proxy at 83.

24. Additionally, the Proxy fails to identify the investment bank that produced the equity report underlying the development of the "Strongbridge April 8 Xeris Projections."

25. Second, the Proxy omits material information concerning MTS's financial analyses.

26. With respect to MTS's Discounted Cash Flow Analysis of Strongbridge and Xeris, the Proxy fails to disclose: (i) the individual inputs and assumptions underlying the discount rate ranges of 12% to 14% and 10% to 12% for Strongbridge and Xeris, respectively; and (ii) the basis

for assuming no terminal value in the analysis and not taking into account the cost of future capital raises.

27. With respect to MTS's Public Trading Comparable Companies Analysis for both Strongbridge and Xeris the Proxy fails to disclose the individual multiples and financial metrics of each company observed by MTS in the analyses.

28. With respect to MTS's Precedent M&A Transaction Analysis, the Proxy fails to disclose the individual multiples and financial metrics of each transaction observed by MTS in the analysis.

29. Third, the Proxy omits material information concerning the background of the Proposed Transaction.

30. The Proxy fails to disclose whether the confidentiality agreement the Company entered into with the party identified in the Proxy as "Party B" that contains a standstill provision that is effective until January 2022 (Proxy at 60), is a "don't-ask, don't-waive" ("DADW") standstill provision that is presently precluding Party B from submitting a topping bid for the Company.

31. Any reasonable Strongbridge stockholder would deem the fact that a likely topping bidder for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

32. The omission of the above-referenced material information renders the following sections of the Proxy Statement false and misleading: "Strongbridge Unaudited Prospective Financial Information," "Opinion of Strongbridge's Financial Advisor," and "Background of the Transaction."

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

33. Plaintiff repeats all previous allegations as if set forth in full.

34. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

35. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Strongbridge's and Xeris's financial projections, MTS's financial analyses, and the background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

36. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

37. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

38. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

**COUNT II**

**Claims Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act**

39. Plaintiff repeats all previous allegations as if set forth in full.

40. The Individual Defendants acted as controlling persons of Strongbridge within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Strongbridge, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

41. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

43. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

44. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Strongbridge stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Strongbridge, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 29, 2021                                     **ENGEL LAW PLLC**

By  */s/ Shallom Engel*
Shallom Engel
**Engel Law PLLC**
2329 Nostrand Avenue, Suite 100
Brooklyn, NY 11210
Telephone: (917) 573-6555
Email: shallom@engellawpllc.com

*Attorneys for Plaintiff*